Hillsborough
No. 7622

# WILLIAM D. HAMBY, JR.

v.

# BENJAMIN C. ADAMS, COMMISSIONER, & a.

July 25, 1977

*Alan J. Cronheim, Raymond J. Kelly,* and New Hampshire Legal Assistance (*Mr. Cronheim* orally), for the plaintiff.

*Edward F. Smith, Andre J. Barbeau, Michael M. Black, Paul V. Kenneally, Robert L. Hermann, Jr.,* and *Lonnie E. Siel* (*Mr. Black* orally), for the New Hampshire Department of Employment Security.

DOUGLAS, J. We are asked herein to determine what wages an unemployment compensation claimant, who has been disqualified from receiving benefits by reason of his voluntary separation from work or his discharge for work-connected misconduct, must earn in order to requalify under RSA 282:4 A (Supp. 1975). For reasons which follow below, we find that RSA 282:4 A, in conjunction with RSA 282:1 M(3) (Supp. 1975), requires that, in order to requalify, an individual must earn in each of three separate weeks an amount equal to sixty percent of his maximum weekly benefit amount.

Claimant William Hamby, who had initially been found eligible for unemployment compensation by the department of unemployment security, was subsequently determined to be ineligible for benefits and overpaid in the amount of $162. Mr. Hamby appealed this determination to the department's appeal tribunal, and a hearing was scheduled for April 19, 1976. Mr. Hamby did not appear at the hearing, however, because prior thereto he received a copy of a letter sent to the department by his employer, J. Treisman, Inc., stating that benefits paid to Mr. Hamby should be charged to their account. The plaintiff was informed by Treisman that the matter would be taken care of and that his appearance would be unnecessary. The appeal tribunal met on the appointed date and dismissed the plaintiff's appeal.

Following instructions printed on the back of the appeal tribunal decision, plaintiff Hamby wrote to the commissioner requesting a reopening of his case. The office of the commissioner treated the

letter as a request to excuse an appearance under RSA 282:5 D, and informed Mr. Hamby that he had not shown sufficient grounds to excuse his failure to appear at the hearing. The plaintiff then filed for de novo review in superior court. Both parties submitted motions for summary judgment. The Court (*Perkins,* J.) granted the plaintiff's motion and denied the department's. The plaintiff was found eligible for benefits because while working for Treisman he had earned, in each of three weeks, an amount greater than sixty percent of his maximum weekly benefit amount. The department's exceptions to these rulings were reserved and transferred.

The department initially contends that the trial court erred in not dismissing the plaintiff's appeal on the grounds that Mr. Hamby, by neglecting to appear at the appeal tribunal hearing, failed to exhaust his administrative remedies. It is clear from our prior decisions, however, that failure to appear at an appeal tribunal hearing will not in all cases bar an unemployment compensation claimant from superior court review. *See, e.g., Pomponio v. State,* 106 N.H. 273, 209 A.2d 733 (1965). Exhaustion of administrative remedies is not, as the department contends, a jurisdictional requirement, but is rather a question to be decided by the superior court under the facts of each case. *See* RSA 282:5 G(1) (Supp. 1975); *Metzger v. Brentwood,* 115 N.H. 287, 343 A.2d 24 (1975). In the instant case, various considerations support the superior court's decision to hear the plaintiff's appeal. It is apparent that the deliberate by-pass of administrative remedies, a major concern in the imposition of the exhaustion requirement, is not a factor in this case. *Compare United American Ins. Co. v. Whaland,* 115 N.H. 212, 337 A.2d 358 (1975). The plaintiff's mistaken belief that his appearance was not required at the hearing was adopted in good faith and was reasonably held under the circumstances. Upon discovery of his error, he diligently sought to reopen administrative channels by petitioning for a rehearing before the tribunal under RSA 282:5 E. The department's argument that the requirement of exhaustion should be applied herein "so that the exercise of administrative expertise, preservation of agency autonomy, and promotion of judicial efficiency may be encouraged" rings hollow in light of the fact that it was the agency and not the claimant who terminated the administrative process.

Furthermore, we have held that where, as here, the issue involves a question of law rather than an exercise of administra-

tive discretion, a court will usually resolve the matter regardless of the administrative posture. *Tremblay v. Town of Hudson,* 116 N.H. 178, 355 A.2d 431 (1976); *Metzger v. Brentwood,* 115 N.H. 287, 343 A.2d 24 (1975). This consideration is particularly germane in the instant case, inasmuch as the department itself has indicated that in view of the insignificant monetary amount involved its appeal would not have been prosecuted except for the desirability of adjudicating the issue of law raised herein.

RSA 282:4 A (Supp. 1975) provides that an individual who has left work voluntarily without good cause or who has been discharged for work-connected misconduct shall be disqualified for benefits until he requalifies by earning in each of three weeks wages in employment "equal to his weekly benefit amount computed in accordance with section 1 M(3)." RSA 282:1 M(3) (Supp. 1975), which deals with the amount of wages an unemployment compensation recipient may earn and still continue to receive benefits, provides that an individual's weekly benefit amount is to be computed by reducing his maximum weekly benefit amount "by all wages and earnings in excess of twenty percent . . . of his maximum weekly benefit amount." The parties are in disagreement as to the interpretation of these statutes. The department maintains that the two sections read together require a claimant to earn in each of three weeks wages in employment in an amount equal to or greater than his weekly benefit amount plus twenty percent. This interpretation has been applied by the department since 1969, when the statutes were enacted in their present form. It is not disputed that under the department's construction of RSA 282:1 M(3), Mr. Hamby would have failed to requalify for benefits.

We have held that where a statute is of doubtful meaning, the long-standing practical and plausible interpretation applied by the agency responsible for its implementation, without any interference by the legislature, is evidence that the administrative construction conforms to the legislative intent. *New Hampshire Retail Grocers Ass'n v. State Tax Comm'n,* 113 N.H. 511, 309 A.2d 890 (1973); *Bellows Falls &c. Co. v. State,* 94 N.H. 187, 49 A.2d 511 (1946). This maxim of statutory construction has no application, however, where, as here, the agency's interpretation is in clear conflict with the express statutory language. *Opinion of the Justices,* 90 N.H. 568, 8 A.2d 597 (1939). RSA 282:4 A (Supp. 1975) requires a requalifying individual to earn wages "equal to

his weekly benefit amount as computed in accordance with section 1 M(3)." The calculation in section 1 M(3) starts with a ceiling figure designated "maximum weekly benefit amount," which it then provides shall be *reduced* under certain circumstances to determine the individual's actual weekly benefit amount. The section at no point contemplates a figure greater than the maximum weekly benefit amount, and the department's 120 percent requirement is therefore wholly without statutory support. We note parenthetically that the legislature has shown itself capable of setting forth a 120 percent earning requirement in clear and unmistakable terms when such is their intention. *See* RSA 282:4 F(5) (Supp. 1975).

The department does not direct us to any statutory language which would support its conclusion. It argues, however, that its construction must nonetheless be correct because in 1969, when the legislature was considering various amendments to RSA ch. 282 (ultimately Laws 1969, 460:6), the department submitted an explanatory report to the labor committee propounding, among other points, the interpretation of section 1 M(3) which it offers herein. The department argues that the legislature's adoption of the present language, taken with its failure to amend RSA 282:1 M(3) in 1971 and 1973 when other sections of chapter 282 were revised, indicates an acquiescence in the department's interpretation. This argument would have had merit if, as discussed above, the department's interpretation had been a plausible reading of the statute. In a situation where the agency offers a construction which is unsupported by the clear statutory language, there is no need for the legislature to amend the provision, for the statute speaks for itself and the error is apparent without such action. *See State v. Boisvert,* 117 N.H. 291, 371 A.2d 1182 (1977).

█ The plaintiff contends that the statutes in question properly read require that in order to requalify for benefits a claimant must earn, in each of three separate weeks, wages equal to or greater than sixty percent of his maximum weekly benefit amount. Under this construction it is undisputed that Mr. Hamby did in fact requalify for unemployment benefits.

The plaintiff's reasoning, which we find persuasive, is as follows. Under RSA 282:1 M(3) (Supp. 1975), after all weekly earnings by a claimant are considered, a figure is calculated which represents the sum the claimant receives from the department in a given week. This is the claimant's "weekly benefit amount." Under the

statute, an individual may earn twenty percent of his maximum weekly benefit amount without any reduction of unemployment benefits. There is a dollar for dollar reduction for everything earned in excess of the twenty percent figure.

Therefore, if a claimant had, for example, a maximum weekly benefit amount of $100, the first twenty percent or $20 earned would not affect his benefit rate. Any excess earned over $20 would, however, be deducted from his weekly amount. If $40 were earned, the first $20 would be disregarded and the balance of $20 deducted from the $100 maximum weekly benefit amount. If $80 were earned, the first $20 would be disregarded, $60 would be deducted, and the weekly benefit amount would be $40. If $100 were earned, the weekly benefit amount would be $20.

Were, however, this individual to earn $60, or 60 percent of his maximum weekly benefit amount, $40 would be deducted from his maximum rate of $100, leaving a weekly benefit amount of $60. It is at this point, when a claimant earns sixty percent of his maximum weekly benefit amount, that his wages will in all cases equal his weekly benefit amount, as required by RSA 282:4 A (Supp. 1975). When an individual meets this requirement in each of three weeks, he requalifies for benefits under that section.

We adopt the foregoing interpretation of RSA 282:4 A and 282:1 M(3) (Supp. 1975) as being consistent with the language employed by the legislature in those sections. Accordingly, we hold that the plaintiff requalified for benefits under RSA 282:4 A (Supp. 1975). Of course, if the legislature meant to have a twenty percent add-on formula, the statute can be amended accordingly. *See, e.g.,* RSA 282:4 F(5) (Supp. 1975).

*Exceptions overruled.*

GRIMES, J., did not sit; the others concurred.