Merrimack
No. 83-264

WILLIAM H. UPSON

v.

THE BOARD OF TRUSTEES OF THE
NEW HAMPSHIRE RETIREMENT SYSTEM

April 16, 1984

*Hampe & McNicholas*, of Concord (*Richard A. Hampe* on the brief and orally), for the plaintiff.

*Gregory H. Smith*, attorney general (*Ronald F. Rodgers*, assistant attorney general, on the brief and orally), for the State.

BROCK, J. The plaintiff, a State employee, filed a petition for declaratory judgment after the defendant board of trustees (the board) refused to accept his application for ordinary disability retirement benefits under the New Hampshire Retirement System. Pursuant to RSA 491:17, the Superior Court (*Souter*, J.) transferred without ruling the following questions of law:

> "(1) Is the plaintiff entitled to apply for ordinary disability benefits pursuant to RSA 100-A:6, I and RSA 100-A:28-a, II?
> (2) Is the defendant's conduct in refusing to accept plaintiff's application such that the plaintiff should be awarded his costs and attorney fees?"

We answer the first question in the affirmative and the second in the negative.

The first question involves the concurrent application of three interrelated statutes. RSA 100-A:5, I(a) (Supp. 1983) provides that any group I member of the New Hampshire Retirement System "may retire on a service retirement allowance" at any time after attaining age sixty. The statute further provides a formula for calculating the amount of the allowance. RSA 100-A:5, I(b) and (c) (Supp. 1983).

RSA 100-A:6, I(a) provides that a group I member "who has 10 or more years of creditable service may be retired by the board of trustees on an ordinary disability retirement allowance," on proof of permanent incapacity for the further performance of duty. Prior to June 1, 1976, paragraph I(b) of the statute provided that "[u]pon

ordinary disability retirement, the group I member shall receive a service retirement allowance if he has attained age sixty, otherwise he shall receive an ordinary disability retirement allowance," the latter allowance being calculated according to a formula different from the service retirement allowance formula in RSA 100-A:5 (Supp. 1983), and producing a smaller allowance.

Effective June 1, 1976, RSA 100-A:6, I(b) was amended. It now reads, in pertinent part: "Upon ordinary disability retirement, the group I member may receive *an ordinary disability retirement allowance which is equal in amount to a service retirement allowance* if he has attained age 60. . . ." RSA 100-A:6, I(b) (Supp. 1983) (emphasis added). It is conceded that this change in the characterization of the allowance was enacted solely to ensure that recipients could exclude it from their "gross income" under the provisions of the Internal Revenue Code. 26 U.S.C.A. § 105(d) (Supp. 1967–1982).

The retirement system is financed through contributions from both employees and employers. *See* RSA 100-A:16 (Supp. 1983). In 1975, the legislature enacted RSA 100-A:28-a, which permits some members to withdraw from the system and to withdraw any accumulated contributions. Paragraph II of that statute reads, in pertinent part:

> "Notwithstanding any other provision of law, any person who withdraws from a retirement system under paragraph I shall be deemed to have met the requirements of a member of group I of the New Hampshire retirement system for all purposes and shall be entitled to all benefits under said system except normal retirement under RSA 100-A:5, provided that such person pays a contribution in lieu of membership of one percent of his salary to the New Hampshire retirement system."

The plaintiff was employed by the office of the legislative budget assistant. He became a group I member of the retirement system on April 2, 1971. On June 26, 1975, he withdrew his accumulated contributions (plus interest) from the system and commenced making contributions in the amount of one percent of his salary, pursuant to RSA 100-A:28-a.

On November 29, 1982, the plaintiff filed an application for ordinary disability retirement with the board. He was sixty-six years of age at the time. The board refused to accept his application, informing him that under RSA 100-A:28-a he was "not eligible for normal retirement benefits and disability retirement is not available to those over age 60. . . ." The question before us is whether this is an accurate statement of the law.

The board's position is that, because the amount of the allowance for disability retirees aged sixty or over, under RSA 100-A:6 (Supp. 1983), is identical to the amount of the allowance for service retirees under RSA 100-A:5 (Supp. 1983), the exclusion in RSA 100-A:28-a applies to both groups, and persons aged sixty or over who have withdrawn from the system are not entitled to *either* normal retirement *or* disability retirement benefits. This position is in clear conflict with the express language of the exclusion, which refers only to "normal retirement under RSA 100-A:5." RSA 100-A:28-a, II.

It is undisputed that disability retirees *under* age sixty may receive an allowance pursuant to RSA 100-A:6 (Supp. 1983) despite having withdrawn from the system. The only distinction between these retirees and those sixty or over, even before the 1976 amendment of RSA 100-A:6, was in the amount of their allowance. Retirees in both groups must have ten years of creditable service and must be permanently disabled. Regardless of any similarity in the calculation of benefits, to maintain that any form of disability retirement under RSA 100-A:6 (Supp. 1983) is in fact "normal retirement under RSA 100-A:5" is to distort the plain language of the statute. The fact that the board has maintained its interpretation consistently over a period of years is irrelevant "where, as here, the agency's interpretation is in clear conflict with the express statutory language." *Hamby v. Adams*, 117 N.H. 606, 609, 376 A.2d 519, 521 (1977).

The State's only argument in support of the board's position is that the legislature, in granting the higher service retirement allowance to disability retirees over sixty, must have intended that the allowance would be funded by the employee's contributions. When an employee withdraws these contributions pursuant to RSA 100-A:28-a, the State argues that he or she has no legitimate expectation of benefits in the amount of a service retirement allowance.

We find this argument unpersuasive. In the absence of more specific evidence in support of the State's view, we think it equally likely that the legislature chose to grant higher benefits to older disability retirees because, from an actuarial standpoint, such retirees will receive benefits for a shorter period of time than younger retirees. Further, had the legislature desired to withhold benefits from employees in the plaintiff's position, it could easily have made that intent clear, either by excluding employees sixty or over from the disability retirement provisions of RSA 100-A:6 (Supp. 1983), or by expressly adding those employees to the exception in RSA 100-A:28-a. The legislature did neither of these things. Accordingly, we answer the first transferred question in the affirmative.

In *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977), we held that "[w]here an individual is forced to seek judicial assistance to secure a clearly defined and established right, which should have been freely enjoyed without such intervention, an award of counsel fees on the basis of bad faith is appropriate." *Id.* at 691, 377 A.2d at 619. This, however, is not a case "where the litigant's conduct can be characterized as unreasonably obdurate or obstinate." *Id.* Nor has the board in this case unnecessarily increased the plaintiff's costs by the use of dilatory tactics similar to those employed by the defendant in *Harkeem.* These factors, combined with the lack of previous judicial construction of the statutes involved here, *see id.* at 692, 377 A.2d at 620, preclude a finding of bad faith *as a matter of law* sufficient to justify an award of attorney's fees. We answer the second transferred question in the negative, while noting that the issue of whether bad faith was present *in fact* remains open on remand.

*Remanded.*

SOUTER, J., did not sit; the others concurred.