Merrimack
No. 84-546

STATE EMPLOYEES' ASSOCIATION OF NEW HAMPSHIRE, INC. & a.

v.

THE STATE OF NEW HAMPSHIRE & a.

January 6, 1986

*William P. Briggs*, of Concord, general counsel, State Employees' Association of New Hampshire, by brief and orally, for the plaintiff.

*Stephen E. Merrill*, attorney general (*David S. Peck*, assistant attorney general, on the brief and orally), for the State.

SOUTER, J. This interlocutory transfer without ruling from the Superior Court (*Cann*, J.) poses the question whether employees of the New Hampshire Pari-Mutuel Commission who fill seasonal positions must normally work at least 37-1/2 hours each week in order to qualify under RSA 98-A:3 for the full benefits of permanent State employees. The answer is yes.

The issue turns on the application of several related sections of RSA chapter 98-A. Two sections of that statute deal with the provision of benefits to State employees who fill seasonal positions. *See* RSA 98-A:3, :6. In order to be eligible for benefits under either section, such an employee must work the "equivalent of 6 months or more" during the preceding twelve months. "The equivalent of 6 months or more" is defined, in turn, as the equivalent of 130 or more days, not necessarily consecutive. RSA 98-A:1, III. That definition proceeds, however, to grant specially favorable treatment to employees of the pari-mutuel commission, by providing that these employees will be credited with one day of work whenever they are employed on a "per diem" basis, regardless of the number of hours that they actually work on a given day. *Id.*

Any employee occupying a seasonal position who fulfills this six month condition is eligible on each anniversary of employment to receive a limited benefit provided by RSA 98-A:6, by being "paid all accumulated annual leave not in excess of [that] allowed by Rule VII, section 3, of the rules of the Department of Personnel." RSA 98-A:6.

Before such an employee will be entitled to "all the rights and benefits of a permanent [State] employee," under RSA 98-A:3, however, he must fulfill the further condition of being "appointed under a seasonal appointment." RSA 98-A:3. "Seasonal appointment" is a term of art, meaning more than merely an appointment to fill a seasonal position. RSA 98-A:1, II defines "seasonal appointment" as an

"appointment made to fill a seasonal position on a full-time basis for the period of appointment." RSA 98-A:1, IV defines "full-time basis" as employment "calling for not less than 37-1/2 hours work in a normal calendar week" (or not less than 40 hours if that is customary for a particular job).

In summary, then, the occupant of a seasonal position who fulfills the six month requirement is entitled to the annual leave benefit. Such an employee who fulfills the additional full-time basis requirement of "seasonal appointment" is eligible for full benefits of a permanent State employee.

The individual plaintiffs are employees of the pari-mutuel commission who work only during the racing season. They are paid on the basis of the number of racing programs during which they work, a method of compensation that we take to be the equivalent of "per diem." See RSA 284:8 (Supp. 1983). This employment normally calls for less than 37-1/2 hours each week, and the wages for such employees are apparently paid from an appropriation known as a "Class 50" line item.

Since the plaintiffs do not normally work the requisite 37-1/2 hour week, they are not employed on the "full-time basis" necessary to qualify for the full benefits of permanent State employees. Nonetheless, prior to 1982, it was the State's administrative practice to overlook this fact, for whatever reason. As a consequence, if pari-mutuel employees like the plaintiffs worked the equivalent of six months within any twelve, they were treated as permanent seasonal employees entitled under RSA 98-A:3 to all the benefits of permanent employees.

In 1982, a budgetary footnote called this favorable treatment into question. Laws 1982, 42:213 provided that no benefits except "the employer share of FICA, . . . unemployment . . . and workman's compensation . . . shall be granted to any class 50 employee, except a seasonal employee as defined in RSA 98-A:1, II." The enactment of the footnote prompted the department of personnel to ask for the attorney general's opinion on whether a pari-mutuel commission employee paid from a class 50 account could qualify as a "seasonal employee [employed on a full-time basis] as defined in RSA 98-A:1, II" if he customarily worked less than 37-1/2 hours a week. It was understood that the answer to this question would determine not only the effect of the footnote on the preexisting practice, but also the plaintiffs' eligibility to receive the benefits of permanent employees under RSA 98-A:3, regardless of the footnote.

The attorney general advised that the pari-mutuel employees could not qualify as "seasonal employees," i.e., as employed on a full-time basis, unless their jobs normally called for at least 37-1/2 hours

of work each week. *See* RSA 98-A:1, II, :3. As a result of this opinion, during the fiscal year beginning July 1, 1982, the individual plaintiffs were denied the full benefits of permanent employees. They then brought the bill in equity that is before us on this interlocutory transfer, claiming that they are eligible for the full benefits of permanent employees. Thereafter, the State agreed, without prejudice to its position, to restore full benefits beginning July 1, 1983, pending resolution of the controversy. Although the budgetary footnote lapsed.after June 30, 1984, the bill in equity remains, seeking both a determination that the individual plaintiffs are eligible for full benefits under RSA 98-A:3 and damages for their denial from July 1, 1982 through June 30, 1983.

Both the issue of damages and the issue of current eligibility for full benefits turn on the words of RSA chapter 98-A, which "are the touchstone of the legislature's intention." *Greenhalge v. Town of Dunbarton*, 122 N.H. 1038, 1040, 453 A.2d 1295, 1296 (1982) (citations omitted). The language, as we have seen already, is as plain as it could be. To be eligible under RSA 98-A:3 for the benefits of a permanent employee, a seasonal employee must be appointed to work on a "full-time basis," RSA 98-A:1, II; that is, to work "37-1/2 hours . . . in a normal calendar week," RSA 98-A:1, IV. The plaintiffs were not appointed to such a job. Consequently they are not entitled to full benefits under RSA 98-A:3 or to damages for the denial of such benefits during the twelve months beginning in July 1982.

█ The plaintiffs' attempts to avoid these obvious conclusions are unavailing. The plaintiffs first argue that the legislative history indicates that the legislature intended to treat pari-mutuel employees as "full-time" if they were compensated on a per diem or per racing program basis. There are two answers to this. First, we do not look to legislative history to modify the meaning of a statute that is plain on its face. *Dover Professional Fire Officers Assoc. v. City of Dover*, 124 N.H. 165, 169, 470 A.2d 866, 868–69 (1983). Even if the plaintiffs could show that some legislators had an intent that ran counter to the statutory language actually enacted, this would not create the uncertainty of statutory meaning that is necessary to justify an inquiry beyond the words of the statute itself.

Second, the legislative history that the plaintiffs cite does not relate to the language in question, "full-time basis," as contained in RSA 98-A:1, II and IV; rather, it relates entirely to "the equivalent of 6 months or more," as contained in RSA 98-A:1, III, :3, :6. For example, as evidence of the legislature's concern to provide favorable treatment for pari-mutuel commission employees, the plaintiffs

cite the history of Laws 1965, 164:1 and Laws 1973, 271:2, the sources of the rule that per diem employment is equivalent to a full day of work. There is no question that the legislature did intend favorable treatment. But it reflected that intent in providing favorable treatment under the six month equivalency rule, which establishes the requirement of receiving any benefit, not under the full-time basis rule, which establishes the additional requirement for receiving full benefits.

If the legislature had intended special treatment for such employees under the full-time basis rule, it would simply have provided in the statement of the rule that a partial day of work compensated on a per diem or per racing program basis would be counted as a full day or 7-1/2 hours. But the legislature did not so provide. The result is that a per diem employee who works at least 130 days in any twelve months is eligible for the minimum benefit under RSA 98-A:6 regardless of the number of hours he normally works on those days; but, unless his job calls for at least 37-1/2 hours in a normal calendar week, he is not eligible for full benefits under RSA 98-A:3.

Finally, the plaintiffs fall back to an argument based on administrative practice. In 1973, the statute was amended into its present form, requiring employment on a full-time basis, as well as for six months, before a seasonal employee could be eligible for the full benefits of a permanent employee under RSA 98-A:3. *See* Laws 1973, 271:2. From the date of that amendment, racing or pari-mutuel employees like the plaintiffs became ineligible for full benefits because they were not employed to work the required 37-1/2 hour week. Yet as we have noted, they were given full benefits nonetheless, until the present controversy arose in 1982.

■■ On this factual basis, the plaintiffs urge us to apply the rule that "where a statute is of doubtful meaning, the long-standing practical and plausible interpretation applied by the agency responsible for its implementation, without any interference by the legislature, is evidence that the administrative construction conforms to the legislative intent." *Hamby v. Adams*, 117 N.H. 606, 609, 376 A.2d 519, 521 (1977) (citations omitted). In this case, however, the plaintiffs cannot get beyond the first condition for applying the rule, that there be a "statute of doubtful meaning." The meaning of the statutory section in issue here is not doubtful, and erroneous administrative practice for nine years cannot change its plain meaning. *Upson v. Board of Trustees*, 124 N.H. 787, 790, 474 A.2d 582, 584 (1984).

■ On the facts stated, the plaintiffs are not entitled to damages and are ineligible for full benefits under RSA 98-A:3.

*Remanded.*

KING, C.J., and JOHNSON, J., did not sit; the others concurred.