Personnel Appeals Board
No. 87-261

### APPEAL OF CARMEN WESTWICK
### (New Hampshire Personnel Appeals Board)

July 11, 1988

*Marsh Law Office*, of Concord (*Peter Marsh* on the brief and orally), for the plaintiff.

*Stephen E. Merrill*, attorney general (*Emily Gray Rice*, assistant attorney general, on the brief and orally), for the State.

BATCHELDER, J. The commissioner of education (the commissioner) dismissed plaintiff Carmen Westwick from her position as Executive Director of the New Hampshire Board of Nursing Education and Nurse Registration (executive director) in accordance with personnel rules which regulate classified employees. *See* RSA 21-I:48; RSA 326-B:5 (1984); *see generally* N.H. ADMIN. R., Per. (1983). The plaintiff filed an appeal with the personnel appeals board, claiming that the commissioner had no authority to dismiss her because the executive director is an unclassified employee. *See* RSA 21-I:49; *see also* RSA 4:1. The personnel appeals board dismissed the appeal, finding that the personnel division properly followed its long-standing practice of treating the executive director as a classified employee and that there was no evidence that the discharge was arbitrary, capricious, illegal or made in bad faith. The executive director appealed. We reverse and remand for proceedings consistent with this opinion.

In September, 1986, Westwick was nominated by the board of nursing education and nurse registration (the board of nursing), and appointed by department of education commissioner John T. McDonald, to be executive director of the board of nursing education and nurse registration. RSA 326-B:5. On her first day of work, September 15, 1986, the plaintiff met with deputy commissioner of education Charles H. Marston and chairwoman of the board of nursing Sophia Antoniou to review the State personnel system as it applied to classified employees. Westwick received an orientation packet containing, among other things, information explaining the State's leave and benefit policies, as well as information pertaining to the recent reorganization of the department of education pursuant to RSA chapter 21-N, which provided that operations of the board of nursing would be overseen by the chief of the department of education's division of standards and certification, rather than by the commissioner. *See* RSA 21-N:7, VII (Supp. 1987). Pertinent to the issue addressed herein, the orientation packet also included a work-week schedule form, which all classified employees were required to complete.

Thereafter, Judith Fillion, the acting chief of the division of standards and certification, informed the plaintiff that all communications with the personnel division should be made through her office, and that the plaintiff should make every effort to complete her work-week schedule form without delay. The plaintiff failed to complete a work-week schedule, despite Fillion's repeated requests throughout the following month.

In December, 1986, Westwick submitted a leave request to the commissioner. In a memo dated December 22, 1986, the commissioner informed the plaintiff that he could not authorize the leave request until she provided him with an approved work-week schedule form. On December 26, 1986, Fillion wrote a memo to the commissioner informing him that the plaintiff took unauthorized leave days on December 23 and 26, by working at home, and on December 24, by taking a floating holiday (a floating holiday is a holiday taken in lieu of a State holiday which falls on either a Saturday or Sunday, or one of three additional holidays each employee is authorized to elect per year). On January 15, 1987, the commissioner wrote a termination letter to Westwick, explaining that "for reasons of willful insubordination and unsatisfactory work performance," and pursuant to the personnel rules, he was terminating her appointment effective March 12, 1987. N.H. ADMIN. R., Per. 302.23.

Thereafter, the plaintiff filed a petition for temporary restraining order and injunctive relief with the superior court. The Court (*Dalianis*, J.) approved the recommendation of the Master (*Mayland H. Morse, Jr.*, Esq.) to deny the petition because, among other reasons, there was an adequate remedy available at law; namely, the appeal process pursuant to personnel rules. *See* N.H. ADMIN. R., Per. 306.04(c). On March 18, 1987, the plaintiff filed her appeal with the personnel appeals board. On March 22, 1987, following a prehearing conference, the personnel appeals board issued a decision dismissing the appeal on the ground that the executive director is a classified employee, in keeping with the past practice of the personnel division.

The sole issue on appeal to this court, as it was before the personnel appeals board, is whether the position of executive director is exempted from the classified employee system under RSA 21-I:49 (Supp. 1987). The statute provides:

"The classified service to which the personnel provisions of this chapter shall apply shall comprise all positions in the state service now existing or hereafter established, except:

I. Those elected by popular vote or by the legislature.

II. Those appointed and commissioned by the governor or the governor and council.

III. The chief executive officer of each department and institution and independent agency.

IV. The deputy of any department head provided for by special statute.

V. Those officers whose salary is specified or provided by special statute.

VI. Personnel of the university system of New Hampshire."

The plaintiff argues that she is exempted under paragraph III because she is the chief executive officer of an independent agency; therefore, only the governor and council have authority to discharge her. *See* RSA 4:1. The State contends that the board of nursing is not an independent agency and that the exemption would be inconsistent with thirty years of the personnel division's practice of designating the executive director as a classified employee.

 The issue raised in this appeal presents a question of statutory interpretation. Such a question is not properly answered, as it was by the personnel appeals board, by looking solely at the past practices of the personnel division. Rather, the question is answered by first looking at the plain meaning of the language of the statute. *Samaha v. Grafton County*, 126 N.H. 583, 585, 493 A.2d 1207, 1209 (1985). As we have said, this provides the "touchstone of the legislature's intention." *State Employees' Assoc. v. State*, 127 N.H. 565, 568, 503 A.2d 829, 831 (1986) (quoting *Greenhalge v. Town of Dunbarton*, 122 N.H. 1038, 1040, 453 A.2d 1295, 1296 (1982)). Where the meaning of the statute is clear and unambiguous, we will decide the case accordingly, even if it is contrary to long-standing administrative practice. *Id.* at 569, 503 A.2d at 833. However, "where a statute is of doubtful meaning, the long-standing practical and plausible interpretation applied by the agency responsible for its implementation, without any interference by the legislature, is evidence that the administrative construction conforms to the legislative intent." *State Employees' Assoc. v. State*, *supra* at 569, 503 A.2d at 832 (quoting *Hamby v. Adams*, 117 N.H. 606, 609, 376 A.2d 519, 521 (1971)).

The pertinent language under paragraph III of RSA 21-I:49 specifies that the exempted position is chief executive officer of an independent agency; however, it does not define either chief executive officer or independent agency. Consequently, in addition to looking at the plain meaning of the words, we refer to related statutes, legislative history and administrative practices as aids to our determination of the meaning of the terms.

The plain meaning of "chief" is being "accorded highest rank, office or rating," WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 387 (1961), or "[o]ne who is put above the rest. Principal; leading; head," BLACK'S LAW DICTIONARY 216 (5th ed.

1979). Since the executive director is the only officer of the board of nursing created by statute, it follows that the executive director is the chief executive officer of that board. Out of at least nineteen other licensing boards, only one, the pharmacy board, contains a statutorily created "chief executive officer." RSA 318:5; *see generally* RSA chs. 309-A to 332-F. Unlike the executive director of the board of nursing, who is nominated by the board of nursing and appointed by the commissioner, the chief executive officer of the pharmacy board is elected from among the members of the board, who are appointed by the governor, *see* RSA 318:2, :5, for a specified term and compensation. *See* RSA 318:2, :3, :4, :5. At least one other licensing board has a statutorily created executive director—the real estate commission. *See* RSA 331-A:1-c. However, that statute also directs that the real estate commission executive director's salary be paid under RSA 94:1-a, thus exempting the position from classified status under paragraph V of RSA 21-I:49.

The statutory organization of licensing boards does not provide a consistent pattern from which we can determine the legislature's intent in creating an executive director for the board of nursing. While there are statutes which specify whether a position is classified or unclassified, *see, e.g.,* RSA 21-P:8, :9 (Supp. 1987) (director of division of motor vehicles is an unclassified employee, while the assistant to the director is a classified employee), these statutes do not necessarily preclude the conclusion that the executive director is an unclassified employee. If the legislature had intended that every statute creating an administrative position would specify whether the position is classified or unclassified, then the exemptions listed under RSA 21-I:49 would be redundant.

The legislative histories of RSA 326-B:5, which creates the executive director position, and of RSA 21-I:49, which provides the exemptions, clarify the relationship between "executive director" and "chief executive officer." Regulation of the nursing profession began in 1907. Laws 1907, ch. 50. Members of the board of nursing, then called the board of examiners, were appointed by the commissioner of education from nominations submitted by the Graduate Nurses' Association of New Hampshire. The commissioner also made rules regulating the examination process, with the advice of the board of examiners. Although amendments were made in 1926, 1939 and 1942, the basic internal organization remained the same until 1947, when the director of nursing education position was created. P.L. ch. 211 (1926); Laws 1939, ch. 64; R.L. ch. 257 (1942); Laws 1947, ch. 285. R.L. 257:2, as amended by the 1947 amendment, provided that the commissioner of

education would nominate a director of nursing education, subject to approval by the governor and council and appointment by the board. In the same year, in Laws 1947, ch. 231, the general court amended R.L. ch. 27 to provide in section 48 that "[n]o commissioner, director, superintendent or other executive head of a state department, agency or institution appointed by a state board, commission or trustees of a state institution, whose tenure of office is indeterminate, shall be discharged or removed except by the governor and council . . . ." In 1947, the board of nursing was a separate independent agency, and the director of nursing education's term was indeterminate; therefore, only the governor and council could remove the director from office.

In 1950, the legislature reorganized the State agencies by transferring agencies to general departments, and creating the classified employee system. The nursing board was transferred to the department of education; however, the statute directing the transfer also provided that the board would continue to operate as a "separate organizational entity." Laws 1950, 5:23. The exemptions to the classified system provided by RSA 21-I:49 were also created in 1950. See Laws 1950, 9:1, section 18 of new R.L. ch. 27-B.

The legislative history and the plain meaning of RSA 21-I:49 and RSA 326-B:5 reveal that paragraph III of RSA 21-I:49 does apply to the executive director of the board of nursing. It is clear from reading the pertinent statutes prior to 1950, that only the governor and council had the authority to remove the director of the board of nursing from office. The reorganization of the State administrative system did not change either the internal structure or the function of the board of nursing; the board remained as an independent agency headed by an executive director.

Two statutes support our determination that the board of nursing operates as an independent agency under the department of education: (1) RSA 326-B:4 (1984), which provides that the board of nursing shall be supervised by the commissioner of education, and (2) RSA 21-G:5, I, which defines an "administratively attached agency." RSA 326-B:4 limits the commissioner's supervision to "the business administration and the reporting of the board." Id. An administratively attached agency is "an independent agency linked to a department for the purposes of reporting and sharing support services." RSA 21-G:5. The commissioner's responsibilities are limited to the purpose of the administrative attachment—reporting and sharing support services. Thus, the nursing board is an independent agency "administratively attached" to the department of education.

Our conclusion is consistent with the recent observations made by the legislature's Joint Committee on Review of Agencies and Programs, which characterized the majority of the licensing boards, including the board of nursing, as independent agencies which "are administratively attached to a state agency." Joint Committee on Review of Agencies and Programs, SUNSET REPORT 1987-F, *Professional Licensing Boards,* at i. Moreover, our conclusion is consistent with our review of the legislative history of the transfer. The relevant law provided that "[t]he board of [nursing] . . . is hereby transferred to the department of education and it shall function as a separate organizational entity as heretofore constituted and with all the powers and duties as heretofore provided, except as otherwise specified herein." Laws 1950, 5:23.

We recognize that our reading of RSA 21-I:49 and RSA 326-B:5 is contrary to more than thirty years of administrative practice; however, the plain language of the statutes, as well as their legislative history, lead to no other reasonable result. The duties imposed on the executive director by RSA 326-B:5 indicate that the position is more than that of a person hired to assist other superiors. *See, e.g.,* RSA 21-P:8, :9. Rather, the executive director is responsible for carrying out the rules and regulations established by the board of nursing. To have the executive director's arms tied with a schedule created by an administrator from a different organizational entity would be inefficient and unreasonable, and contrary to the very purpose of creating administratively attached agencies.

■ Although we determine that the executive director is an unclassified employee within the department of education, the issue of Westwick's remedy remains unsettled because the legislature has transferred the board of nursing from the department of education to the division of public health services, which is within the department of health and human services. *See* Laws 1987, ch. 295. Because we are limited to resolving the issues that are raised on appeal, we do not address the question of whether the executive director continues to act as a chief executive officer of an independent agency. We therefore remand to the personnel appeals board, which shall, in turn, remand the plaintiff's claim to the department affected. *See* RSA 326-B:4, :5, I (Supp. 1987).

*Reversed and remanded.*

THAYER, J., did not sit; the others concurred.