914 F.2d 113
 135 L.R.R.M. (BNA) 2627, 59 USLW 2284,
116 Lab.Cas. P 10,331
 SENTRY MARKETS, INCORPORATED, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
and
Local P-40, United Food and Commercial Workers Union,
Intervening Respondent.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
SENTRY MARKETS INCORPORATED, Respondent.
 Nos. 89-2883, 89-3261.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 4, 1990.
Decided Sept. 26, 1990.
 
 David W. Croysdale and Robert M. Ling, Jr., Michael, Best & Friedrich; and Kenneth R. Loebel, Previant, Goldberg, Uelman, Gratz, Miller & Brueggeman, Milwaukee, Wis., for Sentry Markets Inc.
 Aileen A. Armstrong, Howard E. Perlstein, Joseph H. Bornong, Linda J. Dreeben, N.L.R.B., Appellate Court, Enforcement Litigation, John C. Truesdale, N.L.R.B., Washington, D.C., and Philip E. Bloedorn, and Paul Bosanac, N.L.R.B., Region 30, Milwaukee, Wis., for N.L.R.B.
 Peter J. Ford, Washington, D.C., for Local P-40, United Food and Commercial Workers Union.
 Before BAUER, Chief Judge, and CUMMINGS and MANION, Circuit Judges.
 MANION, Circuit Judge.
 
 
 1
 The National Labor Relations Board (the Board) found Sentry Markets, Inc. (Sentry) violated Sec. 8(a)(1) of the National Labor Relations Act (the Act) by excluding union strikers from its property. Sentry now files a petition for review, which we deny.
 
 I.
 
 2
 Local P-40, United Food and Commercial Workers Union (the Union) represents production and maintenance workers employed by Patrick Cudahy, Inc. (Cudahy), including its plant in West Allis, Wisconsin. Cudahy processes and distributes meat products. In January 1987, the Union struck Cudahy's plant in West Allis. In support of the strike, the Union attempted to instigate a consumer boycott of Cudahy's products (commonly referred to as a "struck product" campaign). The strategy involved handbilling grocery stores in Wisconsin and Illinois. The handbills urged consumers not to buy Cudahy products. Among the stores that the strikers handbilled was Sentry's store in West Allis, about ten miles away from the Cudahy plant. A Sentry representative asked the handbillers to leave Sentry's property. They refused, so Sentry called in the police, who threatened the strikers with arrest. The strikers moved down the street where they continued their handbilling activity.
 
 
 3
 The Board's regional director issued a complaint alleging that Sentry violated Sec. 8(a)(1) of the Act, 29 U.S.C. Sec. 158(a)(1), by refusing to allow the handbillers to conduct their activities on Sentry property. An ALJ ruled against Sentry, and the Board affirmed. Sentry now petitions this court to review the Board's decision, and the Board files a cross-application for enforcement.
 
 II.
 
 4
 Section 7 of the Act, 29 U.S.C. Sec. 157 states: "Employees shall have the right to self-organization, to form, join, or assist labor organizations ... and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection...." Section 8(a)(1) of the Act, 29 U.S.C. Sec. 158(a)(1), makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section ...." The Board has held that Sentry violated Sec. 8(a)(1) by preventing the Cudahy employees from handbilling on Sentry's property. Sentry, while indisputably a statutory employer for purposes of the Act, is not the employer of the striking workers.
 
 
 5
 A reasonable first question is which employers does Sec. 8(a)(1) affect--any employer; an employer who sells one or more of Cudahy's products; or only Cudahy, the employer of the handbillers (the primary employer)? The NLRB cases seem to give an all-inclusive definition to a Sec. 8(a)(1) employer. The Board held in Austin Co., 101 NLRB 1257, 1258-59 (1952), that Secs. 8(a)(1) and (3) do not limit their "prohibitions to acts of an employer vis-a-vis his own employees."[1] Austin, like Sentry here, was the offending employer. Sentry merely includes three or four Cudahy products among the more than 20,000 items it offers for sale. The Austin Co. Board held that Sec. 8(a)(1) covers employers that have "an intimate business character" and a "community of interests, as employers," with the primary employer. Neither the Seventh Circuit nor the Supreme Court has adopted or rejected the Austin Co. holding, although the Supreme Court acknowledged it in Hudgens v. NLRB, 424 U.S. 507, 510 n. 3, 96 S.Ct. 1029, 1032 n. 3, 47 L.Ed.2d 196 (1976). Nevertheless, we need not decide whether a statutory employer may violate Sec. 8(a)(1) with respect to employees other than his own, and if so, whether the requisite community of interests existed between Sentry and Cudahy in this case, since Sentry does not raise these threshold issues in its petition.[2]
 
 
 6
 When employees seek to exercise Sec. 7 rights on private property from which their employer seeks to exclude them, "the Board must reach an accommodation between the employees' section 7 rights and the employer's property rights ' "with as little destruction of one [right] as is consistent with the maintenance of the other." ' " NLRB v. Schwab Foods, Inc., 858 F.2d 1285, 1289 (7th Cir.1988) (quoting Hudgens, supra, at 522, 96 S.Ct. at 1037, which in turn quotes NLRB v. Babcock & Wilcox Co., 351 U.S. 105, 112, 76 S.Ct. 679, 684, 100 L.Ed. 975 (1956) (footnote omitted)). Although most cases applying the Babcock & Wilcox accommodation standard have involved an alleged violation by the primary employer, the Board has extended the standard to cases involving other employers. See, e.g., Montgomery Ward & Co., 265 NLRB 60 (1982). "[I]n making the accommodation the Board must take into account the character of all the rights involved because the 'locus of the accommodation ... may fall at differing points along the spectrum depending on the nature and strength of the respective Sec. 7 rights and private property rights asserted in any given context.' " Jean Country, 291 NLRB No. 4, 1988-89 CCH NLRB 28,380; 28,382 (1988) (quoting Hudgens, supra, at 522, 96 S.Ct. at 1037). The availability of alternatives for the Union to exercise its Sec. 7 rights must be considered. Id. Our review of the Board's findings is limited; we will uphold those findings if they are supported by substantial evidence on the record as a whole. Kankakee-Iroquois County Employers' Association v. NLRB, 825 F.2d 1091, 1093 (7th Cir.1987).
 
 
 7
 Under the Board's Jean Country analysis, Sentry's private property right must be balanced against the Cudahy strikers' Sec. 7 right, giving due consideration to the availability of reasonably effective alternative means. Jean Country lists the factors in weighing the property right, including "the use to which the property is put, the restrictions ... that are imposed on public access to the property, and the property's relative size and openness." 1988-89 CCH NLRB at 28,383. In this case, Sentry has a leasehold interest in its store, storefront sidewalk, and parking lot. It is a tenant in a strip shopping center with three entrances from public streets. In the similar case of Mountain Country Food Store, 292 NLRB No. 100 (1989), the Board found the employer's property right to be relatively substantial. The Board in this case found Sentry's property right to be only slightly weaker than that in Mountain Country because Sentry permits the Salvation Army to use its property for charitable purposes. Since none of the parties challenge the Board's characterization of Sentry's property right in this case, neither will we.
 
 
 8
 Factors that may be considered under Jean Country in weighing the Union's Sec. 7 right include "the nature of the right, the identity of [primary] employer ..., the relationship of the employer or other target to the property to which access is sought, the identity of the audience to which the communications concerning the Section 7 right are directed, and the manner in which the activity related to that right is carried out." 1988-89 CCH NLRB at 28,383. The Board in this case concluded that the employees asserted a relatively strong Sec. 7 right. The Board used no analysis in coming to this conclusion, but simply relied on NLRB v. Fruit Packers Local 760, 377 U.S. 58, 84 S.Ct. 1063, 12 L.Ed.2d 129 (1964) [hereinafter Fruit Packers ]. However, Fruit Packers only dealt with the question of whether struck product consumer picketing constitutes an unlawful secondary boycott under Sec. 8(b)(4)(ii)(B) of the Act, which provides that it is an unfair labor practice for a union "to threaten, coerce, or restrain any person" with the object of "forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer ... or to cease doing business with any other person...." A bare majority[3] of the Supreme Court held that struck product consumer picketing does not violate the ban on secondary boycotts if it is employed only to persuade customers not to buy the struck product and is closely confined to the primary dispute. The Court noted that the language of the statute appeared to outlaw the consumer picketing; however, "it is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers." Id. at 72, 84 S.Ct. at 1071 (quoting Holy Trinity Church v. United States, 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892)). Based on Sec. 8(b)(4)(ii)(B)'s legislative history, the Court held struck product picketing is not barred. Although Justice Brennan's conclusion that legislative intent may override a statute's plain meaning raises present-day questions,[4] we do not have the occasion here to discuss Fruit Packers' applicability. The issue in this case is not whether struck product consumer handbilling is an unlawful secondary boycott,[5] but rather whether it is a protected Sec. 7 right, an issue Fruit Packers does not address.
 
 
 9
 In Montgomery Ward & Co., 265 NLRB 60 (1982), the Board held struck product consumer handbilling to be of the highest "nature and strength." Id. at 66. The Board noted that the handbilling activity was "designed and intended to improve employees' terms and conditions of employment ..., [the retailer had] a 'unity of interest' with [the manufacturer] and it [was] that product nexus which is the focus of the employee activity ..., the activity in question [had] a limited audience and a limited intended result ..., [and] the conduct [was] necessary to gain support of the public in a primary dispute with an employer who offers its products to the public only through intermediaries." Id. (footnote omitted). Sentry characterizes the Sec. 7 right in this case as weak principally because there is no "vital link" connecting the handbilling to the employees' dispute with Cudahy. Cf. Fairmont Hotel Co., 282 NLRB 139, 143 (1986) (quoting Sears, Roebuck & Co. v. San Diego County Council of Carpenters, 436 U.S. 180, 206 n. 42, 98 S.Ct. 1745, 1762 n. 42, 56 L.Ed.2d 209 (1978)). Sentry particularly cites the fact that only a tiny fraction of Cudahy's customers shop at the West Allis Sentry store, Cudahy being a national distributor of processed meat products. Therefore the handbilling at the Sentry store would have an unnoticed effect upon Cudahy's sales. However, this alleged defect is generic to most struck product campaigns, the success of which depend not on a single outlet but instead on a comprehensive approach. Chances are that no single retail store sells more than a small percentage of the total Cudahy output. If the Union cannot handbill Sentry's West Allis store on this account, it probably could not handbill any store. The struck product campaign would inevitably fail. Sentry does not challenge Montgomery Ward 's conclusion that struck product handbilling is a protected Sec. 7 right. We agree with the Board in finding the Sec. 7 right in this case to be equally strong to that in Montgomery Ward.
 
 
 10
 Sentry's principal attack on the Board's conclusion concerns whether there were reasonable alternative means of communications which the strikers could have used. Sentry states that picketing or billboarding on the public sidewalks at the entrances to Sentry's parking lot was "perhaps the more reasonable alternative." Sentry also suggests numerous other alternatives, including advertising and letters to the editor in local newspapers, community access cable television, door-to-door delivery of handbills in nearby neighborhoods, and telephone solicitation. Under Jean Country, "the General Counsel bears the initial burden on the alternative means factor...." 1988-89 CCH NLRB at 28,383.
 
 
 11
 The Board rejected each of Sentry's suggested alternatives as ineffective, unsafe, or too expensive. Handbilling at the entrances generally involved distributing handbills to cars rather than pedestrians. The Board relied on a striker's testimony that this method had been tried and proved ineffective. A city engineer testified the high volume of traffic may make distribution of handbills on public property unsafe. Furthermore, picket signs could not contain all the information the Union wished to disseminate with respect to the Cudahy products.
 
 
 12
 Sentry also argued that the Union could use various forms of mass and local media to disseminate its message. The Board held in Jean Country, supra, that the use of mass media would be a feasible alternative to direct contact only in exceptional cases. Id. The Board found that this case is not an exceptional one, and we agree. Sentry's argument that the Union's intended audience was all buyers of Cudahy products rather than just the West Allis store's patrons does not distinguish this case from the typical struck product case. Almost any struck product case will involve a manufacturer who distributes goods through several (or even many) retailers. This simply means that the Union, in order to do an effective job, needs to handbill at numerous locations. Moreover, as the Sixth Circuit held in Giant Food Markets, Inc. v. NLRB, 633 F.2d 18, 24 (6th Cir.1980), "[a] mass media campaign would ... diffuse the effectiveness of the communication by being physically removed from the actual location of the store whose policies are at issue and would prevent any personal contact between the Union and the intended audience." Both the ALJ and the Board found that a mass media effort would not be a reasonable alternative to handbilling, and we find that there is substantial support in the record for this conclusion.
 
 
 13
 Sentry's petition for review is denied. The Board's cross-application for enforcement is granted.
 
 
 
 [1]
 Section 2(3) of the Act, 29 U.S.C. Sec. 152(3), states: "The term 'employee' shall include any employee, and shall not be limited to the employees of a particular employer, unless [the Act] explicitly states otherwise...." The Austin Co. Board noted that Sec. 8(a)(1)--which provides an employer may not "interfere with, restrain, or coerce employees"--does not explicitly limit the covered employees to those of the violating employer. "[T]he statute, read literally, precludes any employer from discriminating with respect to any employee...." 101 NLRB at 1258
 
 
 [2]
 At oral argument Sentry attempted to expand its argument, claiming it had no direct or indirect employer-employee relationship with the Cudahy strikers and therefore could not violate the Act. However, Sentry concedes in its appellate briefs that the analysis for resolving access cases applied in Jean Country, 291 NLRB No. 4 (1988), is appropriate and only challenges the Board's application of Jean Country 's principles in this case. Thus we need only review the record to determine if substantial evidence supports the Board's findings
 
 
 [3]
 Justice Harlan, joined by Justice Stewart, dissented, arguing Sec. 8(b)(4)(ii)(B)'s legislative history does not support an exception for struck product picketing. Justice Black concurred in the majority's result, but agreed with Justice Harlan's statutory construction. (Justice Black would have ruled in favor of the strikers on First Amendment grounds.) Justice Douglas took no part in the case
 
 
 [4]
 See, e.g., INS v. Cardoza Fonseca, 480 U.S. 421, 107 S.Ct. 1207, 1224, 94 L.Ed.2d 434 (1987) (Scalia, J., concurring in judgment). See also K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 108 S.Ct. 1811, 1834-35, 100 L.Ed.2d 313 (1988) (Scalia, J., concurring in part and dissenting in part) (Justice Scalia, joined by Chief Justice Rehnquist and Justices Blackmun and O'Connor, criticizing Justice Brennan's concurrence, which relied on the same Holy Trinity Church quotation Justice Brennan had used 24 years earlier in Fruit Packers ); State Employees' Assn v. New Hampshire, 127 N.H. 565, 503 A.2d 829, 832 (1986) (Souter, J.) ("[W]e do not look to legislative history to modify the meaning of a statute that is plain on its face.")
 
 
 [5]
 The Supreme Court recently has held that mere handbilling (without picketing) is not coercive enough to violate Sec. 8(b)(4)(ii). DeBartolo Corp. v. Florida Gulf Coast Bldg. & Const., 485 U.S. 568, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988)