Hillsborough-southern judicial district
No. 2001-453

HILDA PENNELLI

v.

TOWN OF PELHAM

Submitted: July 17, 2002
Opinion Issued: September 18, 2002

*Michael L. Donovan*, of Concord, by brief, for the plaintiff.

*Soule, Leslie, Kidder, Sayward & Loughman, P.L.L.C.*, of Salem (*Diane M. Gorrow* on the brief), for the defendant.

DALIANIS, J. The defendant, the Town of Pelham (town), appeals from an order of the Superior Court (*Hampsey*, J.) reversing the town's partial denial of an elderly tax exemption to the plaintiff, Hilda Pennelli. We affirm.

The relevant facts follow. The plaintiff owns a split-level home in Pelham. For many years, her daughter-in-law and grandchildren have lived in the lower half of the house. In 1995, the plaintiff enlarged the area in which her daughter-in-law and grandchildren live by converting an attached garage into living space and adding a second floor above the converted garage. In 1999, the plaintiff applied for an elderly tax exemption, which the town partially denied. The town exempted the plaintiff's own living area from taxation, but declined to exempt the area occupied by her daughter-in-law and grandchildren, terming it the "second unit" of her "two family dwelling unit."

On appeal to the trial court, the plaintiff argued that the statutes governing elderly tax exemptions did not authorize the town to grant her only a partial property tax exemption. The trial court agreed.

"The trial court's interpretation of a statute is a question of law, which we review *de novo*." *Crowley v. Frazier*, 147 N.H. 387, 389 (2001). "[I]n construing tax statutes, we are guided by the well-settled principle . . . that a tax exemption is construed to give full effect to the legislative intent of the statute." *In re Estate of Martin*, 125 N.H. 690, 691 (1984) (quotation omitted).

"The starting point in any statutory interpretation case is the language of the statute itself." *Crowley*, 147 N.H. at 389. We first look to the plain and ordinary meaning of the words used. *Petition of Bailey*, 146 N.H. 197, 198 (2001). "As we examine the language, we do not merely look at isolated words or phrases, but instead we consider the statute as a whole." *DeVere v. Attorney General*, 146 N.H. 762, 765 (2001). "In so doing, we are better able to discern the legislature's intent, and therefore better able to understand the statutory language in light of the policy sought to be advanced by the entire statutory scheme." *Id.* (quotation omitted).

Furthermore, we interpret statutes in the context of the overall statutory scheme. *Nault v. N & L Dev. Co.*, 146 N.H. 35, 37 (2001). "When interpreting two statutes which deal with a similar subject matter, we will construe them so that they do not contradict each other, and so that they will lead to reasonable results and effectuate the legislative purpose of the statute." *Id.* at 38 (quotation omitted).

Statutes related to tax exemptions for individuals are found in RSA 72:28 (Supp. 2001) through RSA 72:72 (Supp. 2001). RSA 72:29 (Supp. 2001) sets forth the definitions applicable to many of the exemptions, including the elderly tax exemption. RSA 72:39-a (Supp. 2001) describes

what is necessary to qualify for the elderly tax exemption; the elderly person must: (1) own the property in question, either alone or jointly; (2) have resided in this State for at least five years; (3) have no more than a certain amount of net income; and (4) own net assets of no more than a defined amount. *See* RSA 72:39-a. It is undisputed that the plaintiff meets all of the above requirements.

RSA 72:39-a, I(c) sets forth the requirements pertaining to net assets. Excluded from the net asset calculation is "the value of the person's actual residence and the land upon which it is located." RSA 72:39-a, I(c). The term "residence," as used in RSA 72:39-a, I(c), "means the housing unit, and related structures . . . which is the person's principal home, and which the person in good faith regards as home." *Id.* The term "residence" excludes "attached dwelling units." *Id.*

The town argues that the area in which the plaintiff's daughter-in-law and grandchildren live is an "attached dwelling unit." As such, the town asserts, it is not the plaintiff's "residence" and is ineligible for an elderly tax exemption. We disagree. When we construe all of the statutory provisions related to the elderly tax exemption together, we conclude that the exemption applies to dwelling units that are attached to the elderly person's principal residence.

■ Pursuant to RSA 72:41 (Supp. 2001), the elderly tax exemption applies to "residential real estate." RSA 72:29, II defines "residential real estate" as "the real estate which the person qualified for an exemption . . . occupies as his principal place of abode together with any land or buildings appurtenant thereto." RSA 72:29, II. Appurtenant means "annexed or belonging legally to some more important thing." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 107 (unabridged ed. 1961). Thus, the elderly tax exemption applies both to the plaintiff's principal residence and to the attached area occupied by her daughter-in-law and grandchildren.

■ The town's reliance upon RSA 72:39-a, I(c) is misplaced. This provision does not define the scope of the elderly tax exemption. Rather, it explains how to calculate an individual applicant's net assets. Because the term "residence," as defined in RSA 72:39-a, I(c), does not include "attached dwelling units," the value of attached dwelling units is included in the net asset calculation while the value of the individual's "residence" is not. RSA 72:39-a, I(c).

If the legislature intended the elderly tax exemption to apply only to the elderly individual's "residence" as defined in RSA 72-39:a, I(c), then the phrase "residential real estate" in RSA 72:41 would be superfluous. "Basic statutory construction rules require that all of the words of a statute must be given effect and that the legislature is presumed not to have used

superfluous or redundant words." *Appeal of Reid,* 143 N.H. 246, 252 (1998) (quotation omitted).

■ Our construction of the scope of the elderly tax exemption is consistent with the exemption's purpose. The evident purpose of the elderly tax exemption "is to protect elderly homeowners from loss of their homes by reason of taxation beyond their means." *Opinion of the Justices,* 115 N.H. 228, 232 (1975) (construing proposed 1975 amendment to statute). Consistent with this purpose, the exemption applies not only to the elderly individual's home, but also to the land upon which the home was built and the buildings annexed to it. In this way, the exemption protects the entirety of the elderly individual's property interest.

Our construction of the elderly tax exemption is also consistent with the scope of many other individual tax exemptions. *See* RSA 72:35 (Supp. 2001) (tax credit for individual honorably discharged from military service applies to property occupied as principal place of residence and "to any land or buildings appurtenant to the residence"); RSA 72:37 (Supp. 2001) (tax exemption for legally blind applies to "residential real estate"); RSA 72:37-a (Supp. 2001) (tax exemption for owners of "residential real estate" who have made improvements for individuals with disabilities); RSA 72:37-b (Supp. 2001) (exemption for disabled applies to property occupied as principal place of abode and to land or buildings appurtenant thereto).

The town argues that the legislative history of RSA 72:39-a, I(c) supports its construction. In particular, the town points to the comments and testimony of Representative Kirby, the sponsor of House Bill 331, which amended RSA 72:39-a, I(c) in 1996. *See* Laws 1996, 140:1.

■ We do not consider legislative history to construe a statute such as RSA 72:39-a, I(c), which is clear on its face. *See Petition of Walker,* 138 N.H. 471, 474 (1994). The town mistakenly asserts that a different rule applies to tax exemption statutes. In a number of cases involving tax exemption statutes, we have stated, in dicta, that "[a]bsent a formal legislative history of the statute, we must glean the intent of the legislature from the plain meaning of the language of the statute." *In re Estate of Martin,* 125 N.H. at 691. The town argues that this phrase means that even when a tax exemption statute is clear on its face, we look to legislative history to glean legislative intent. To the contrary, as with any statute, we do not look to the legislative history of a tax exemption statute unless its language is ambiguous or where more than one reasonable interpretation of it exists. *See Appeal of Inter-Lakes Sch. Bd.,* 147 N.H. 28, 32 (2001). We expressly disavow our dicta in *In re Estate of Martin,* 125 N.H. at 691, to the extent that it may have been interpreted otherwise.

In this case, the plain language of the statute speaks for itself. We cannot rely upon Representative Kirby's comments to add words that the legislature did not see fit to include or otherwise to alter the plain language of the statute as enacted. *See Petition of Walker*, 138 N.H. at 474. "Even if the plaintiff[ ] could show that some legislators had an intent that ran counter to the statutory language actually enacted, this would not create the uncertainty of statutory meaning that is necessary to justify an inquiry beyond the words of the statute itself." *State Employees' Assoc. v. State*, 127 N.H. 565, 568 (1986).

 The town relies upon cases concerning tax exemption for religious and educational properties to argue that the elderly tax exemption should be apportioned according to how much of the property the elderly individual uses and occupies. *See Appeal of Emissaries of Divine Light*, 140 N.H. 552, 556 (1995). RSA 72:41 governs apportionment of the elderly tax exemption. Pursuant to RSA 72:41, apportionment is based upon the extent of the elderly individual's ownership interest in the property, not upon the extent of his or her use of it.

*Affirmed.*

BROCK, C.J., and NADEAU and DUGGAN, JJ., concurred.