Rockingham
No. 2006-515

FORMULA DEVELOPMENT CORPORATION

v.

TOWN OF CHESTER

CLINTON REALTY TRUST

v.

TOWN OF CHESTER

Argued: April 3, 2007
Opinion Issued: September 20, 2007

*Sumner F. Kalman, Attorney at Law, P.C.*, of Plaistow (*Sumner F. Kalman* and *Thea Valvanis* on the joint brief), for Formula Development Corporation, and *Upton & Hatfield, LLP*, of Concord (*Russell F. Hilliard* and *Kenneth J. Barnes* on the joint brief, and *Mr. Hilliard* orally), for Clinton Realty Trust.

*Wadleigh, Starr & Peters, P.L.L.C.*, of Manchester (*Dean B. Eggert* and *Gregory M. Sargent* on the brief, and *Mr. Sargent* orally), for the defendant.

HICKS, J. The plaintiffs, Formula Development Corporation (Formula) and Clinton Realty Trust (Clinton), appeal the decision of the Superior Court (*Morrill*, J.) denying their petition for abatement of a land use change tax (LUCT), *see* RSA 79-A:7 (2003 & Supp. 2006), that was imposed by the defendant, Town of Chester (town). We reverse and remand.

The record supports the following. Clinton was the original owner of a thirty-acre parcel of property in Chester. In 2000, the town's planning board granted subdivision approval for the development of a twenty-unit, single-family, condominium cluster development. The development included nearly fifteen acres of open space, pursuant to the town's zoning ordinance which required: (1) at least 1.5 acres of land per housing unit; and (2) at least forty percent of the total area of the "[c]luster tract" be retained for open space. *See* CHESTER ZONING ORDINANCE, art. 6, §§ 6.1.6., 6.1.9. Construction of the road running through the subdivision and other infrastructure began in December 2000 or January 2001.

Formula acquired the property in January 2002 with the agreement that both Clinton and Formula were responsible for the LUCT assessed on the property. The town assessed the LUCT on a site-by-site basis as each condominium unit was sold or developed until March 2004, when the total remaining acreage fell below the minimum acreage requirement for current use assessment, at which point the remainder of the property was taken out of current use and assessed an LUCT. *See* RSA 79-A:4, I (2003). The plaintiffs paid the LUCT on each site but filed petitions for abatement with the superior court, which were denied. The plaintiffs appeal, arguing that the plain meaning of RSA 79-A:7 requires that the LUCT be assessed on the entire property at the time road construction began.

This case presents an issue of statutory construction, which we review *de novo. Pennelli v. Town of Pelham*, 148 N.H. 365, 366 (2002). We are the final arbiter of the intent of the legislature as expressed in the words of the statute. *Appeal of Estate of Van Lunen*, 145 N.H. 82, 86 (2000). When

construing the statute's meaning, we first examine its language, and where possible, ascribe the plain and ordinary meanings to words used. *Id.* If the language used is clear and unambiguous, we will not look beyond the language of the statute to discern legislative intent. *State v. Leonard,* 151 N.H. 201, 203 (2004). We will, however, construe all parts of the statute together to effectuate its overall purpose and to avoid an absurd or unjust result. *Van Lunen,* 145 N.H. at 86.

This case addresses portions of RSA 79-A:7, IV and V. RSA 79-A:7, IV(a) dictates when land is considered changed in use for purposes of applying the LUCT. The *amount* of land considered changed in use, however, is dictated by RSA 79-A:7, V, which provides that land is removed from current use lot-by-lot based upon "the number of acres on which an actual physical change has taken place . . . and land not physically changed shall remain under current use assessment." RSA 79-A:7, V. There are, however, two exceptions to this provision:

> (a) When a road is constructed or other utilities installed pursuant to a development plan which has received all necessary local, state or federal approvals, all lots or building sites, including roads and utilities, shown on the plan and served by such road or utilities shall be considered changed in use, with the exception of any lot or site, or combination of adjacent lots or sites under the same ownership, large enough to remain qualified for current use assessment under the completed development plan . . . .
>
> (b) When land, though not physically changed, is used in the satisfaction of density, setback, or other local, state or federal requirements as part of a contiguous development site, such land shall be considered changed in use at the time the development site is changed in use.

RSA 79-A:7, V.

The plaintiffs focus upon subparagraph (b), but argue that either exception applies to take the entire property out of current use when road construction began. The plaintiffs rely upon our decision in *Dana Patterson, Inc. v. Town of Merrimack,* 130 N.H. 353 (1988), and the fact that the property was approved as a cluster development, as opposed to a traditional subdivision.

The defendant counters that the property consists of twenty units, each of which is "a distinct parcel of land with an equal share in common area." Although labeled as a cluster development, the defendant argues that the property is more akin to a traditional subdivision, where each lot is treated as an individual site. Relying upon our decision in *Van Lunen,* the

defendant argues that each site, together with the site's proportionate share of the common area, comes out of current use and is assessed an LUCT as it is sold or further developed. The defendant argues that once the remaining sites, together with their respective shares of the common area, no longer contain a sufficient amount of acreage to satisfy the current use acreage requirement, *see* RSA 79-A:4, I, the remainder of the property then comes out of current use.

As a starting point in our analysis, we first note that subparagraphs (a) and (b) provide two *separate* exceptions to the general rule of lot-by-lot LUCT assessment. *See* RSA 79-A:7, V. Subparagraph (a) provides the first exception, then concludes with a period. RSA 79-A:7, V(a). This is followed by subparagraph (b), which begins with a capital letter. RSA 79-A:7, V(b). As indicated by the period, the language in subparagraph (b) is not dependent upon, nor necessarily related to, the language in subparagraph (a). Because subparagraphs (a) and (b) are two separate exceptions, land may fall under either or both.

Our next task is to determine which, if any, exception applies to the plaintiffs' thirty-acre parcel. We hold that the exception in subparagraph (b) applies in this case and therefore we need not reach subparagraph (a). Accordingly, we disagree with the defendant that our decision in *Van Lunen* is instructive since it addressed the application of subparagraph (a) only. *Van Lunen*, 145 N.H. at 87-88.

■ The thirty-acre parcel here was approved and developed as a cluster subdivision, with approximately fifteen acres of the land preserved as open space in satisfaction of the town's open space and density requirements. Accordingly, subparagraph (b) directs that the fifteen acres are considered changed in use at the time the "development site is changed in use." RSA 79-A:7, V(b). The plain language of the statute provides that where, as here, a portion of the site being developed is reserved as open space to satisfy local land use requirements, then (1) the property, constituting the entire development site, comes out of current use all at once, and (2) a change in use on the development site determines the date on which the LUCT is assessed on the entire property. *See* RSA 79-A:7, V(b).

Our holding is consistent with *Patterson*, where we held that open space preserved in a cluster development for purposes of satisfying the town's open space and density requirements was considered changed in use when construction of the cluster development began. *Patterson*, 130 N.H. at 354, 356. While we recognize that *Patterson* was decided in 1988, three years before the relevant language in paragraph V was added, *see* Laws 1991, 281:15, we find it to be instructive, since *Patterson* deals precisely with the situation described in RSA 79-A:7, V(b). Perhaps not coincidentally, the

language in subparagraph (b) is, in places, identical to language we used in *Patterson*. *See Patterson*, 130 N.H. at 354 (referring to open space acreage "used to satisfy the density requirement"), 356 (referring to the property as "the development site").

The plain language of RSA 79-A:7, V(b), therefore, does not provide for the defendant's piece-meal approach. The statute refers to undeveloped land that is "part of a *contiguous development site*." RSA 79-A:7, V(b) (emphasis added). The statute, therefore, treats the property, including any preserved open space area required by local regulations, as a single site. To hold otherwise would add words to the statute which the legislature did not see fit to include. *See Pennelli*, 148 N.H. at 369. In addition, the town's own zoning ordinance treats cluster developments as a single site. In setting the minimum area guidelines for cluster developments, Article 6 of the zoning ordinance states: "lots or tracts under one ownership or brought together under one ownership shall be considered merged and considered as a *single* tract." CHESTER ZONING ORDINANCE, art. 6, § 6.1.5.1. (emphasis added).

We next turn to the issue of when the "development site" is considered changed in use. RSA 79-A:7, V(b). As we stated above, while RSA 79-A:7, V determines the *amount* of land that changes in use, RSA 79-A:7, IV determines *when* land is considered changed in use. To determine *when* the "development site" is considered changed in use, therefore, we look to RSA 79-A:7, IV(a). To look elsewhere would divest paragraph IV of meaning.

■ RSA 79-A:7, IV(a) provides that land is considered changed in use when "[a]ctual construction begins on the site causing physical changes in the earth, such as building a road to serve ... planned residential ... buildings." The date on which road construction began on the site, therefore, is the relevant date for the LUCT assessment on the entire property.

Our application of RSA 79-A:7, IV(a) is consistent with *Patterson*. Given that the relevant language in RSA 79-A:7, IV(a) has not changed since *Patterson*, our analysis in that case retains its precedential value. In *Patterson*, we applied RSA 79-A:7, IV(a) to determine when property was considered changed in use. We held: "[W]e conclude that the land underwent a change in use ... when an act of construction was performed on the land to begin the development of the project." *Patterson*, 130 N.H. at 356. Construction of the road in this case, therefore, constitutes a change in use of the development site. *See id.*; *see also* RSA 79-A:7, IV(a).

The defendant argues that regardless of the open space and density requirements for this property, the twenty units are actually "distinct

parcels of land," with a divided ownership interest in the common land. To support its argument, the defendant points to: (1) the "Declaration of Condominium" for the subdivision, which provides that each condominium "unit" has set boundaries; (2) the warranty deeds conveying each individual condominium unit, which have specified acreage and property lines described therein; and (3) RSA 356-B:4 (1995), which provides for separate taxation for "[e]ach condominium unit." We do not see how any of these points supports the defendant's argument. Should the town wish to assess the LUCT on each individual unit separately, our holding today does not preclude it from doing so. However, should the town assess the LUCT in this manner, each lot must be assessed at the time road construction began.

The defendant further argues that the administrative rules adopted by the current use board (CUB) support its argument that the LUCT is assessed on a site-by-site basis. During the years 2000 through 2004, when the property was under development, the CUB adopted rules applying RSA 79-A:7, V. *See* N.H. ADMIN. RULES, Cub 307.01(c) (1998) and N.H. ADMIN. RULES, Cub 307.01(d) (2004) (amended and readopted as Cub 307.02, 307.03 (2006)). Our interpretation of RSA 79-A:7, however, is not influenced by administrative rules. "[A]dministrative officials do not possess the power to contravene a statute[] [and] . . . administrative rules may not add to, detract from, or modify the statute which they are intended to implement." *Appeal of Anderson*, 147 N.H. 181, 183 (2001) (quotation and citation omitted). Our holding above, therefore, remains unchanged. To the extent the CUB rules contradict our holding today, they are *ultra vires*.

Accordingly, it was error for the trial court to deny the plaintiffs' petition for tax abatement. The trial court found that construction on the road serving the site began in December 2000 or January 2001. We remand with instructions to determine more specifically when road construction began, for that is when the LUCT should have been assessed on the entire thirty-acre tract.

*Reversed and remanded.*

BRODERICK, C.J., and GALWAY, J., concurred; DALIANIS, J., with whom DUGGAN, J., joined, concurred specially.

DALIANIS, J., concurring specially. I concur in the result the majority reaches. I disagree with a portion of the majority's analysis, however, and offer the following in its stead.

I agree with the majority that this case requires that we examine the interplay between RSA 79-A:7, IV and V (2003).

"The starting point in any statutory interpretation case is the language of the statute itself." *Pennelli v. Town of Pelham*, 148 N.H. 365, 366 (2002) (quotation omitted). We first look to the plain and ordinary meaning of the words used. *Id.*

RSA 79-A:7, IV provides, in pertinent part:

> For purposes of this section land use shall be considered changed and the land use change tax shall become payable when:
>
> (a) Actual construction begins on the site causing physical changes in the earth, such as building a road to serve existing or planned residential, commercial, industrial, or institutional buildings; . . . or any other act consistent with the construction of buildings on the site . . . .
>
> (b) Topsoil, gravel or minerals are excavated or dug from the site;
>
> . . . .
>
> (c) By reason of size, the site no longer conforms to criteria established by the board under RSA 79-A:4, I.

Thus, under this provision, land is considered changed in use when: (a) actual construction, such as the building of a road, has begun on the site; or (b) topsoil, gravel or minerals have been excavated or dug from the site; or (c) because of its size, the site no longer qualifies as land in current use (*e.g.*, the land is no longer ten acres or more in size).

RSA 79-A:7, V provides, in pertinent part, that:

> Except in the case of land which has changed to a use which does not qualify for current use assessment due to size, only the number of acres on which an actual physical change has taken place shall become subject to the land use change tax, and land not physically changed shall remain under current use assessment . . . .

The general rule, therefore, is that only the land on which the actual physical change (*i.e.*, construction) occurs is subject to the land use change tax (LUCT). For instance, under this general rule, if a road is constructed, only the land on which the road is actually constructed is subject to the LUCT.

As the majority aptly notes, RSA 79-A:7, V sets forth two exceptions to this general rule. Under the first exception, "[w]hen a road is constructed or other utilities installed" pursuant to an approved development plan, "*all* lots or building sites" shown on the plan and served by the road and utilities are subject to the LUCT. RSA 79-A:7, V(a) (emphasis added). The

only land that does not come out of current use and is not subject to the LUCT is that which is in contiguous lots and is "large enough to remain qualified for current use assessment under the *completed* development plan." *Id.* (emphasis added). Under the first exception, therefore, *all* of the lots of a cluster development served by a common road come out of current use except those lots that are going to remain as open space under the completed development plan and are large enough to qualify for current use assessment. *But see Appeal of Estate of Van Lunen*, 145 N.H. 82, 87-88 (2000) (holding that because a subdivision, *before* it was completed, had contiguous lots with acreage of more than ten acres once the land on which the road construction occurred was disqualified, the town was entitled to impose the LUCT on a lot-by-lot basis as disqualifying events occurred for each individual lot).

The second exception, RSA 79-A:7, V(b), provides that even if land has not been physically changed itself, it will be considered to be changed in use, and, therefore, subject to the LUCT, if it is "used in the satisfaction of density, setback, or other local, state or federal requirements as part of a contiguous development site." Such land will be considered changed in use "at the time the development site is changed in use." *Id.* In other words, if there is land that will remain as open space even when the development plan is completed, it will be deemed changed in use and subject to the LUCT if this land is used to satisfy some local, state or federal requirement as part of a contiguous development site. *See Dana Patterson, Inc. v. Town of Merrimack*, 130 N.H. 353, 354, 356 (1988) (decided before RSA 79-A:7, V(b) was enacted) (open space preserved in cluster development to satisfy town's open space and density requirements considered changed in use when construction of cluster development began).

RSA 79-A:7, V(b) does not indicate when a development site is considered to be changed in use. The majority looks to RSA 79-A:7, IV to answer this question. In so doing, I believe that the majority errs.

RSA 79-A:7, IV cannot be read in isolation. We interpret statutes not in isolation but in the context of the overall statutory scheme. *See Portsmouth Country Club v. Town of Greenland*, 152 N.H. 617, 620 (2005). RSA 79-A:7, IV, which provides that a land use change occurs whenever actual construction begins, cannot be read without also considering RSA 79-A:7, V, which provides that, ordinarily, only the land on which the change actually occurs is considered changed in use. A cluster development, consisting of several building lots, therefore, cannot be considered changed in use merely because a road was constructed, *unless* the exception to this general rule set forth in RSA 79-A:7, V(a) applies. I

believe that it is not possible to read RSA 79-A:7, IV without considering the general rule set forth in RSA 79-A:7, V and its two exceptions.

A development site is considered changed in use, I believe, when all of the lots within that site come out of current use. To determine when this occurs, one must refer back to RSA 79-A:7, V(a). Under RSA 79-A:7, V(a), the entire development site is changed in use when the road comes in and all of the lots come out of current use, except those adjacent lots that will remain as open space in the completed development plan and are large enough to qualify for current use assessment.

In the instant case, once the road that would service the lots in the cluster subdivision was constructed, all of the lots in that subdivision were deemed changed in use and were subject to the LUCT. RSA 79-A:7, V(a). The approximately fifteen acres of open space was also deemed changed in use and subject to the LUCT because it was reserved to satisfy local land use requirements. *See* RSA 79-A:7, V(b). Had it not been used to satisfy these requirements, the open space would have remained in current use indefinitely as provided in RSA 79-A:7, V(a).

This statutory interpretation conflicts with that in *Appeal of Estate of Van Lunen.* In *Appeal of Estate of Van Lunen,* the town had removed the petitioner's subdivided lots from current use on a lot-by-lot basis as they were built or sold. *Appeal of Estate of Van Lunen,* 145 N.H. at 83. The petitioner argued that RSA 79-A:7, V(a) "require[d] a single land use change tax assessment on the entire subdivision at the time road work began and that a lot-by-lot assessment was unlawful." *Id.* at 84. We disagreed and interpreted RSA 79-A:7, V(a) to permit lot-by-lot assessment of an approved subdivision if, when construction first began, there remained contiguous lots with a combined acreage of more than ten acres. *Id.* at 87-88. We ruled that the plain language of RSA 79-A:7, V(a) "dictate[d] that adjacent lots under the same ownership totaling more than ten acres remain in current use until each lot is disqualified." *Id.* at 88.

I believe that our statutory interpretation in *Appeal of Estate of Van Lunen* was incorrect. There is nothing in the plain language of RSA 79-A:7, V(a) that permits lot-by-lot assessment. To the contrary, the plain language of this provision requires that "*all* lots or building sites" be subject to the LUCT "[w]hen a road is constructed or other utilities installed." RSA 79-A:7, V(a) (emphasis added). The only lots or building sites that do not come out of current use are those adjacent lots or sites that are large enough to remain qualified for current use assessment "under the *completed* development plan." *Id.* (emphasis added). In *Appeal of Estate of Van Lunen,* I believe we erred by focusing upon whether such lots or sites existed when construction began, instead of upon whether they were intended to exist once the development plan was *completed.* If

the completed development plan contemplates that there will be undeveloped adjacent lots or sites that will be large enough to qualify for current use assessment, then these undeveloped adjacent lots or sites remain in current use. However, even if the completed development plan contemplates that there will be such undeveloped adjacent lots, the other lots serviced by the road or utilities still come out all at once. As I see it, nothing in RSA 79-A:7, V(a) permits the kind of piecemeal assessment that we approved in *Appeal of Estate of Van Lunen.*

Accordingly, I would overrule *Appeal of Estate of Van Lunen* to this extent. "The stability of the law does not require the continuance of recognized error." *Matarese v. N.H. Mun. Assoc. Prop.-Liab. Ins. Trust,* 147 N.H. 396, 400 (2002) (quotation omitted). "Where a decision has proven unworkable or badly reasoned ... we will not hesitate to revisit it." *Providence Mut. Fire Ins. Co. v. Scanlon,* 138 N.H. 301, 304 (1994).

DUGGAN, J., joins in the special concurrence.