Carroll
No. 2008-223

## GREG TAYLOR AND GAIL TAYLOR, TRUSTEES OF SHADY ACRES REALTY TRUST

### v.

### TOWN OF WAKEFIELD

### TOWN OF WAKEFIELD BOARD OF SELECTMEN

### v.

### TOWN OF WAKEFIELD ZONING BOARD OF ADJUSTMENT

Argued: September 16, 2008
Opinion Issued: October 31, 2008

*Wholey & Pelech Law Office*, of Portsmouth (*Bernard W. Pelech* on the joint brief and orally), for Greg and Gail Taylor.

*Sager Law, PLLC*, of Ossipee (*Richard D. Sager* on the joint brief and orally), for the Town of Wakefield Board of Selectmen.

*Walker & Varney, P.C.*, of Wolfeboro (*Thomas R. Walker* on the brief and orally), for intervenors Peter A. Harrington and Amy M. Harrington.

*McNeill, Taylor and Gallo, P.A.*, of Dover (*William L. Tanguay* on the brief and orally), for intervenors James F. Doyle and Charles K. McLaughlin.

DUGGAN, J. Greg and Gail Taylor, trustees of Shady Acres Realty Trust, challenge a Superior Court (*Fitzgerald*, J.) order affirming a decision of the Town of Wakefield Zoning Board of Adjustment (ZBA) granting, with conditions, an equitable waiver for a thirty-five-foot wide waterfront access easement from land owned by intervenors Peter and Amy Harrington over the Taylors' waterfront lot. Because we conclude that the superior court erred in concluding that the evidence supported the ZBA finding that the intervenors met the requirements of RSA 674:33-a, I(b) (2006), we reverse.

The record supports the following facts. Linwood and Sylvia Gagnon conveyed three separate tracts of land to intervenors James F. Doyle and Charles K. McLaughlin, including Lot 77-86 (the non-shorefront lot) and Lot 77-64 (the shorefront lot). The shorefront lot has approximately 127 feet of frontage on Pine River Pond. The non-shorefront lot borders the shorefront lot, but has no frontage on the pond.

Doyle and McLaughlin conveyed, by warranty deed, the shorefront lot to Lawrence Gaff. In the deed, Doyle and McLaughlin created an easement over the shorefront lot in favor of the non-shorefront lot "to provide vehicular and pedestrian ingress, egress and access to the shore of Pine River Pond . . . ." The easement ran across the shorefront lot and granted the non-shorefront lot thirty-five feet of frontage access on Pine River Pond. Doyle and McLaughlin later conveyed the non-shorefront lot, which

included the easement, to the Harringtons by warranty deed. In 2002, the Harringtons received a building permit to construct a home. The home was completed, inspected and approved.

The Town of Wakefield Board of Selectmen subsequently notified Doyle and McLaughlin that the easement violated a town zoning ordinance that required the easement to have a minimum of 100 feet of shore frontage. Gaff later conveyed the shorefront lot, including the easement, by warranty deed to the Taylors.

The Town of Wakefield obtained injunctive relief in an enforcement action in which the superior court ruled that the easement violated the ordinance. The superior court, however, declined the town's request to impose fines and civil penalties on Doyle and McLaughlin for the period of time preceding the order for injunctive relief because it found the parties had a genuine dispute as to the applicability and interpretation of the ordinance. In its order, the superior court noted, "Nothing in this Order shall preclude any interested party from seeking appropriate approval from the regulatory bodies of the Town for an easement to be located either in its current configuration, or otherwise, for the benefit of the non-shorefront lot."

In 2006, the Harringtons applied to the ZBA for an equitable waiver of the dimensional requirement. See RSA 674:33-a (2008). The ZBA conducted a public hearing at which representatives for both the Taylors and Harringtons appeared. A representative for the town was present but did not participate. At the end of the meeting, the ZBA voted on each of the four criteria in RSA 674:33-a, I, and granted the equitable waiver by a 3-2 vote.

The Taylors and the selectmen timely filed requests for rehearing. The ZBA denied both requests, and the Taylors and selectmen filed separate appeals in superior court. The superior court consolidated the appeals and the Harringtons, Doyle and McLaughlin intervened.

In affirming the ZBA's decision to grant the waiver, the court first rejected the Taylors' contention that ZBA member Cecile Arnone should have recused herself pursuant to RSA 673:14, I (Supp. 2005) (amended 2007). The court also rejected the selectmen's argument that RSA 674:33-a, I, which applies to a "lot or other division of land," does not apply to easements. Finally, the court ruled that the ZBA decision was reasonable because the Harringtons met the four statutory conditions for waiver; the court also rejected the Taylors' contention that the ZBA erred by applying a "legitimate mistake" standard.

On appeal, the Taylors argue that the superior court erred: (1) in not ruling that Arnone should have been disqualified at the September 11, 2006 hearing; (2) by ruling that RSA 674:33-a, I, applies to an easement; (3) in ruling that the evidence supports findings that the four statutory require-

ments for waiver were met; and (4) in misinterpreting RSA 674:33-a, I(b) by applying a "legitimate mistake" standard.

Our review in zoning cases is limited. *Harrington v. Town of Warner*, 152 N.H. 74, 77 (2005). Factual findings of the ZBA are deemed *prima facie* lawful and reasonable and will not be set aside by the superior court absent errors of law, unless the court is persuaded by a balance of probabilities on the evidence before it that the ZBA decision is unreasonable. *Garrison v. Town of Henniker*, 154 N.H. 26, 29 (2006); *see* RSA 677:6 (2008). We will uphold the superior court's decision unless the evidence does not support it or it is legally erroneous. *Chester Rod & Gun Club v. Town of Chester*, 152 N.H. 577, 580 (2005).

We first address the Taylors' argument that Arnone should have been disqualified pursuant to the "juror standard" prescribed by RSA 673:14 (2006). Doyle and McLaughlin contend that the disqualification issue was not preserved for review because the Taylors failed to timely raise it before the ZBA.

■ The superior court ruled that, although the Taylors first raised disqualification of Arnone in their motion for rehearing, the issue was preserved for review because they raised it "at the earliest possible time." *See Fox v. Town of Greenland*, 151 N.H. 600, 604 (2004) (requiring disqualification issues in administrative appeals to be "raised at the earliest possible time"). The superior court found that the Taylors first learned of Arnone's potential conflict only after the ZBA voted on the application. The record reveals no contrary evidence. Thus, we conclude the superior court was correct in ruling that the issue of disqualification was timely raised.

The Taylors argue that Arnone should have been disqualified because she was a former employee of McLaughlin and was aware that McLaughlin was "in fact a party to the case." They contend that McLaughlin was a party because the application clearly showed that McLaughlin's company paid the Harringtons' application fee, he was one of the parties who originally created the easement, and he was a party to the original enforcement action brought by the town. The Taylors point out that Arnone always recused herself whenever McLaughlin personally applied and appeared before the ZBA. The Taylors further argue that since Arnone was being asked to make findings concerning McLaughlin's creation of the easement and because the need for the waiver was as a result of McLaughlin's actions, she should have recused herself.

Disqualification is governed by RSA 673:14. It provides that a member shall be disqualified "if that member has a direct personal or pecuniary interest in the outcome which differs from the interest of other citizens, or

if that member would be *disqualified for any cause to act as a juror upon the trial of the same matter in any action at law.*" RSA 673:14, I (emphasis added).

The "juror standard" is governed by RSA 500-A:12 (1997). *See Dover v. Kimball*, 136 N.H. 441, 445 (1992). The statute, in part, states: "Any juror may be required by the court, on motion of a party in the case to be tried, to answer upon oath if he . . . is employed by or employs any party in the case." RSA 500-A:12, I. It requires disqualification if "it appears that any juror is not indifferent . . . ." RSA 500-A:12, II.

In matters of statutory interpretation, we are the final arbiter of legislative intent as expressed in the words of the statute considered as a whole. We first examine the language of the statute and ascribe the plain and ordinary meanings to the words used. *Portsmouth Country Club v. Town of Greenland*, 152 N.H. 617, 620 (2005). If the language used is clear and unambiguous, we will not look beyond the language of the statute to discern legislative intent. *Formula Dev. Corp. v. Town of Chester*, 156 N.H. 177, 179 (2007).

The superior court found that Arnone was not required to disqualify herself because, at the time of the ZBA hearing, she was not an employee of McLaughlin and because McLaughlin was not a party. On its face, RSA 500-A:12 does not disqualify former employees *per se*, but only those who appear "not indifferent." Thus we affirm the superior court's ruling rejecting the Taylors' argument that Arnone should have been disqualified merely because she was McLaughlin's former employee.

Of the three additional arguments raised on appeal for Arnone's disqualification, the Taylors argued only that McLaughlin's company paid the application fee in their request for rehearing. Thus we address only this claim. *See* RSA 677:3 (2008) ("no ground not set forth in the [request for rehearing] shall be urged, relied on, or given any consideration by a court unless the court for good cause shown shall allow the appellant to specify additional grounds").

With respect to McLaughlin's company paying the application fee, the Taylors did not allege that Arnone was not indifferent. Nonetheless, based upon the Taylors' contention, the ZBA chairman addressed the disqualification issue when the ZBA considered the Taylors' motion for rehearing. He concluded that the ZBA members present at the initial hearing had "no concern" that Arnone was "in any way biased toward McLaughlin." *See* RSA 673:14, II. This ruling is supported by the record.

We find no other evidence in the record, nor do the Taylors cite any, that would disqualify Arnone as a juror were she sitting upon a trial of the same

matter in any action at law. Accordingly, we uphold the superior court's finding that Arnone was not required to recuse herself.

The Taylors next contend that because an easement is not a lot or other division of land, RSA 674:33-a, I, does not apply. We need not decide this issue, because even assuming that the easement is a lot or other division of land, we conclude that the superior court erred in finding that the four specific criteria set forth in RSA 674:33-a, I, were met.

To receive an equitable waiver under RSA 674:33-a, I, an applicant must meet four criteria:

> (a) That the violation was not noticed or discovered by any owner, former owner, owner's agent or representative, or municipal official, until after a structure in violation had been substantially completed, or until after a lot or other division of land in violation had been subdivided by conveyance to a bona fide purchaser for value;

> (b) That the violation was not an outcome of ignorance of the law or ordinance, failure to inquire, obfuscation, misrepresentation, or bad faith on the part of any owner, owner's agent or representative, but was instead caused by either a good faith error in measurement or calculation made by an owner or owner's agent, or by an error in ordinance interpretation or applicability made by a municipal official in the process of issuing a permit over which that official had authority;

> (c) That the physical or dimensional violation does not constitute a public or private nuisance, nor diminish the value of other property in the area, nor interfere with or adversely affect any present or permissible future uses of any such property; and

> (d) That due to the degree of past construction or investment made in ignorance of the facts constituting the violation, the cost of correction so far outweighs any public benefit to be gained, that it would be inequitable to require the violation to be corrected.

RSA 674:33-a, I(a)-(d). The Taylors contend that the evidence does not support a finding that the Harringtons met any of the four statutory criteria.

Because a party must meet all four requirements to be eligible for a waiver, we need address only RSA 674:33-a, I(b). That subsection states that absent certain conditions, the violation for which the applicant seeks an equitable waiver must have been caused by one of two conditions: (1) an error in measurement or calculation by the owner or owner's agent; or (2) an error by a municipal permitting official in interpreting or applying the

ordinance. *See* RSA 674:33-a, I(b). The Harringtons do not contend that the violation was the result of a municipal permitting official's misinterpretation of the ordinance or an error in measurement by an owner or owner's agent. Thus, the question before us is whether the violation was caused by an error in calculation by the owner or owner's agent. The Harringtons argue that the original misinterpretation of the ordinance by an owner constituted the error in *calculation* on the owner's part and therefore falls within the statute. We disagree.

■ When interpreting a statute, we will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Lambert v. Belknap County Convention*, 157 N.H. 375, 378 (2008). "Calculate" means to "[a]scertain by mathematical methods, compute," RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 209 (1966), or "[t]o answer or determine by mathematical processes," WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 351 (unabridged ed. 2002). Viewed in the context of the entire subsection, the term "error in calculation" does not lend itself to an interpretation that includes an owner's misinterpretation of zoning ordinances. *See Town of Chester*, 156 N.H. at 179 ("We will . . . construe all parts of the statute together to effectuate its overall purpose . . . ."). Although an error interpreting a zoning ordinance by certain municipal officials is included in the statute, an owner's error in interpreting a zoning ordinance is not. *See Portsmouth Country Club*, 152 N.H. at 620.

Doyle and McLaughlin argue that state and local officials commonly construe RSA 674:33-a, I(b) as encompassing an owner's honest or legitimate mistake. To support this position, they point to a recent publication from the New Hampshire Office of Energy and Planning (OEP), titled, THE BOARD OF ADJUSTMENT IN NEW HAMPSHIRE, A HANDBOOK FOR LOCAL OFFICIALS (March 2008). In this handbook, the OEP writes:

> When a lot or structure is discovered to be in violation of a physical layout or dimensional requirement the ZBA may grant a waiver only if each of the four findings [as outlined in the statute] are made: a) lack of discovery; b) *honest mistake*; c) no diminution in value or surrounding property; and d) the cost of correcting the mistake outweighs any public benefit.

*Id.* at 24 (emphasis added). In describing the procedure to grant a waiver pursuant to RSA 674:33-a, I(b), the OEP further states that if violation of the ordinance was "not an outcome of . . . bad faith but [was] the result of a *legitimate mistake* . . . [then] the board can move on to the additional findings [RSA 674:33-a, I(c) and (d)] to grant the waiver." *Id.* at 48 (emphasis added).

Doyle and McLaughlin also note that the ZBA uses similar language in its published instructions for persons applying for an equitable waiver. Titled *APPLICATION FOR EQUITABLE WAIVER OF DIMENSIONAL REQUIREMENT, Instructions and Information,* the ZBA publication states in part:

> For an Equitable Waiver to be legally granted, the Board (ZBA) may grant [a waiver] only [if the] applicant can meet the required standards:
>
> . . . .
>
> 2. The nonconformity was not an outcome of ignorance of the law or bad faith but was instead caused by *a legitimate mistake.*

(Emphasis added.)

■ As the final arbiter of legislative intent as expressed in the words of the statute considered as a whole, we find that the use of the term "honest mistake" or "legitimate mistake" in describing the requirements of RSA 674:33-a, I(b) is overly broad. *See Portsmouth Country Club,* 152 N.H. at 620. Certainly, innocent errors in measurement or calculation by an owner, or errors in ordinance interpretation or applicability made by certain municipal officials, may be honest or legitimate mistakes. However, the "legitimate mistake" standard encompasses more than the plain language of RSA 674:33-a, I(b).

■ According to the record, if there was any good faith error in interpreting or applying the ordinance when the easement was created, it was not on the part of any municipal official. Private parties created the nonconforming easement. The record also does not support a finding that the owner or owner's agent created the easement as a result of an error in measurement or calculation. Because neither requirement of RSA 674:33-a, I(b) is satisfied, there can be no equitable waiver.

The intervenors argue that the Harringtons are entitled to equitable relief because they are innocent purchasers for value who relied upon the easement when making both purchasing and improvement decisions and who may suffer a diminution of enjoyment and value in their real property without the waiver. This may be true, but, based upon the record before us, relief is not available under the narrow requirements of RSA 674:33-a, I(b). We note that in addition to applying for an equitable waiver, the Harringtons applied for a variance or, alternatively, an appeal of administrative decision if the waiver was not granted. These options are presumably still available to the Harringtons and this decision does not foreclose them from seeking those or other remedies.

We conclude that the superior court erred in finding that the evidence supported the ZBA's finding that the requirements of RSA 674:33-a, I(b) were met. Accordingly we need not address the parties' other arguments.

*Reversed.*

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.